IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

EDWARD MAYES,

       Plaintiff,

       v.

KAISER FOUNDATION HOSPITALS, et al.,

       Defendants.

No. CIV S-12-1726 KJM EFB

ORDER

/

       This case was on calendar on December 14, 2012 for a hearing on a motion to dismiss filed by defendants Kaiser Foundation Hospitals (KFH), Wynetta McGriffin, Janitress Nathaniel, and Sherri Ambrose (collectively, "defendants").[1]  Seth Neulight, Nixon Peabody LLP, appeared for defendants; Pamela Price appeared for plaintiff.  After considering the parties' arguments, the court GRANTS the motion.

I. BACKGROUND

       On May 14, 2012, plaintiff Edward Mayes filed an action in Solano County Superior Court alleging several causes of action stemming from his termination from

---

[1] An additional defendant, Martha Hudson, has not joined the motion and apparently has not been served.  In addition, although the caption of the complaint spells defendant Nathaniel's name "Nathanial," the body of the complaint uses both spellings.  In defendants' motion the name is spelled "Nathaniel," which is the spelling the court adopts.

1

1  employment at Kaiser Permanente Hospital in Vallejo.  ECF No. 1 at 7-18.  Defendants
2  removed the action to this court on June 28, 2012.  ECF No. 1.
3         On July 10, 2012, plaintiff filed a demand for a jury trial and on August 7, 2012,
4  filed a first amended complaint.  ECF No. 7.  Thereafter the parties stipulated to plaintiff's filing
5  a second amended complaint (SAC).  ECF Nos. 10, 11.  Plaintiff filed the Second Amended
6  Complaint on September 21, 2012, identifying seven causes of action: (1) retaliation in violation
7  of the Fair Labor Standards Act (FLSA), 29 U.S.C. §215(a)(3), against all defendants;
8  (2) wrongful termination in violation of the public policy embodied in California Labor Code
9  §§ 1173 and 1199 against KFH; (3) wrongful termination of public policy embodied in
10 California Health and Safety Code § 1276.4 against KFH; (4) violation of California's Fair
11 Employment and Housing Act (FEHA), Cal. Govt. Code §§ 12900, *et seq*., because of race and
12 gender discrimination against KFH; (5) failure to prevent discrimination against KFH;
13 (6) violation of 42 U.S.C. § 1981 because of race discrimination against all defendants;
14 (7) violation of 42 USC § 2000e-2 based on race and gender discrimination against KFH.  ECF
15 No. 12.
16        The following facts are taken from the Second Amended Complaint.  Plaintiff
17 alleges he was hired as a registered nurse (RN) in 2006 and worked at Kaiser Permanente
18 Hospital in Vallejo until his termination on July 1, 2011.  ECF No. 12 ¶ 9.  He was assigned to
19 work on the fifth floor of Kaiser Vallejo and was one of only two male registered nurses.  *Id*.
20 ¶ 10.  Plaintiff is African-American.  *Id*. ¶ 2.
21        In 2007, plaintiff became a Union Representative with the California Nurses
22 Association (CNA) and in that position regularly advocated for patient care and safety as well as
23 for nurses' labor rights.  *Id*. ¶¶ 9, 10.
24        In 2010, a doctor issued an order that patient FW be given three showers a week;
25 plaintiff was assigned as FW's primary RN and began to give FW the showers as ordered.  *Id*.
26 ¶ 13.  Other nurses had not followed the orders before plaintiff took over FW's care and did not

give FW showers when plaintiff was on vacation. *Id*. ¶¶ 11-12, 16. Plaintiff asked defendant McGriff, who was plaintiff's supervisor on the fifth floor, and defendant Nathaniel, who was the Adult Patient Care Services Administrator and another of plaintiff's supervisors, for assistance, as it was difficult to give FW showers. *Id*. ¶¶ 4, 5, 14.

On November 8, 2010, plaintiff, in his capacity as CNA representative, attended a meeting with KFH management personnel and other nurses. Plaintiff and other CNA representatives presented information suggesting that managers manipulated acuities, a system of points used to set patient-nurse staffing ratios, resulting in a lower ratio than that permitted by law. *Id*. ¶ 17. Plaintiff and other CNA representatives also presented evidence that Kaiser managers on the third floor had altered nurses' time cards, which resulted in nurses being denied overtime they had earned, and suggested that the motive for the alteration might be a bonus offered to Kaiser managers who cut costs. *Id*. ¶ 18. Plaintiff asked for an audit of the entire Kaiser Vallejo payroll and of the acuity alterations; an audit would have affected defendants McGriff, Nathaniel and Ambrose because they are floor managers. *Id*. ¶¶ 19-20.

On November 10, 2010, an assistant manager told plaintiff he was being investigated for failing to give medications to FW and that defendants Nathaniel, McGriff and Ambrose had requested the investigation. *Id*. ¶ 21. On November 16, 2010, defendant Nathaniel told plaintiff he was being put on administrative leave for not following doctor's orders regarding pain medication for FW. *Id*. ¶ 22. Two days later, plaintiff and his union representative met with Nathaniel and Ambrose, who usually did not participate in the preliminary stages of an investigation, and presented documentation that all the nurses on the fifth floor were administering pain medication in the same way as plaintiff. *Id*. ¶¶ 23-24. Eventually, after being asked to account for all the medication he had given FW, plaintiff demonstrated he had not taken medications prescribed to FW. *Id*. ¶¶ 25, 28.

In January 2011, defendants accused plaintiff of the same failures and Nathaniel, Ambrose and McGriff suspended plaintiff for one week. *Id*. ¶ 29. On March 9, 2011 KFH

3

1  accused plaintiff of not providing medications to another patient, and of taking medications, but
2  eventually closed the investigation without finding that plaintiff had committed misconduct.  *Id.*
3  ¶ 30.  On March 21, 2011, Nathaniel said plaintiff was responsible for missing narcotics.  *Id.*
4  ¶ 31.  A scheduled meeting never occurred because defendants knew no narcotics were missing.
5  *Id.*  Plaintiff was terminated on July 1, 2011 because of the missing medications, which also had
6  been the subject of the March accusations.  *Id.* ¶ 32.

7  II.  STANDARDS FOR A MOTION TO DISMISS[2]

8      A.  Rule 12(b)(6) Generally

9          Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to
10 dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may
11 dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged
12 under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.
13 1990).

14         Although a complaint need contain only "a short and plain statement of the claim
15 showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion
16 to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a
17 claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
18 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include
19 something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or
20 "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Id.*

---

[2] As discussed more fully below, defendants argue that plaintiff's state-law wrongful termination claims are preempted by the National Labor Relations Act (NLRA).  Some courts have treated an NLRA preemption claim as a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  *See, e.g.*, *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602 (6th Cir. 2004); *Mancuso v. Walgreen Co.*, No. C 12–03696 WHA, 2012 WL 4371768, at *3 (N.D. Cal. Sep. 24, 2012).  In the absence of Ninth Circuit authority directing the court to use the standards applicable to a motion to dismiss for subject matter jurisdiction, this court declines to do so.  *See, e.g., Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348, 1350 (9th Cir. 1984) (reviewing 12(b)(6) dismissal of claim found to be preempted).

(quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001). A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

B. Review of Documents

Defendants have asked the court to refer to the Collective Bargaining Agreement (CBA) between KFH and CNA, which they have attached as an exhibit to their memorandum of points and authorities, arguing that "its provisions are integral to the viability of Plaintiff's FLSA retaliation claim." ECF No. 17 at 6 n.4. "A district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*,

5

443 F.3d 676, 681 (9th Cir. 2006). The Ninth Circuit has explained that such reliance is permissible when "plaintiff's claim depends on the contents of a document" that is not attached to the complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (in order to prevent a plaintiff from prevailing on a Rule 12(b)(6) motion by omitting documents underlying a claim, court may consider the document if its authenticity is not questioned). In this case, plaintiff does not object to the court's considering the CBA in connection with this motion; defendant's request for consideration is granted.

III.  RACE AND SEX DISCRIMINATION

Defendants argue that plaintiff's claims of discrimination are not supported by any factual detail except for the bare facts that plaintiff is an African-American and was one of two male registered nurses on the fifth floor. Defendants say these facts are insufficient support for plaintiff's fourth, sixth and seventh causes of action. They also argue that because plaintiff has not adequately pleaded discrimination, his claim that KFH failed to prevent discrimination also fails. Plaintiff has not addressed this argument in his opposition. At argument, when given the opportunity, plaintiff's counsel did not advance anything more of substance.

Under Title VII of the Civil Rights Act (Title VII), 42 U.S.C. § 2000e-2(a)(1), it is unlawful for an employer "to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin . . . . Similarly, under California's FEHA, Cal. Govt. Code § 12940(a), it is unlawful for an employer to discharge a person from employment "because of race . . . sex, [or] gender . . . ." Additionally, under 42 U.S.C. § 1981, discrimination based on "ancestry or ethnic characteristics" is prohibited. Employment discrimination claims under Title VII, FEHA and § 1981 are analyzed in the same manner. *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 850 (9th Cir. 2004); *Cook v. Lindsay Olive Growers*, 911 F.3d 233, 241 (9th Cir. 1990); *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000). In *Swierkiewcz v. Sorema N.A.*, 534 U.S. 502, 508 (2002), the Supreme Court held that a Title VII complaint need

6

not contain specific facts establishing a prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), but instead must contain only a short and plain statement of the claim sufficient to give the employer notice of his claims. In that case, the plaintiff pleaded that he had been terminated because of his national origin and age and described the events leading to his termination, including the ages and nationalities of some of the people involved with his termination; the Court found that this "easily satisfie[d] the requirements of Rule 8(a)." *Id*. at 514.

Here, although plaintiff describes some of the events leading to his termination, he provides no meaningful detail suggesting the termination was because of his race or sex. Because a necessary element of a claim of failure to prevent discrimination from occurring is discrimination, plaintiff's failure to plead adequately his discrimination claims dooms his failure to prevent discrimination claim as well. *Trujillo v. North County Transit Dist*., 63 Cal. App. 4th 280, 289 (1998); CAL. GOVT. CODE § 12940(I). At the hearing, plaintiff's counsel suggested plaintiff may not be able to plead these claims more robustly. Given the tentative nature of counsel's comments, and the stage of the case, plaintiff will be given an opportunity to amend, if he is able to do so consonant with Rule 11 of the Federal Rules of Civil Procedure.

IV. FLSA RETALIATION

Under 29 U.S.C. § 215(a)(3), it is unlawful to discharge or discriminate against an employee because the employee has complained about violations of the FLSA. The elements of such a claim are "(1) the plaintiff must have engaged in statutorily protected conduct under § 115(a)(3) of the FLSA, or the employer must have erroneously believed that the plaintiff engaged in such conduct; (2) the plaintiff must have suffered some adverse employment action; and (3) a causal link must exist between the plaintiff's conduct and the employment action." *Singh v. Jutla & C.D. & R's Oil, Inc*., 214 F. Supp. 2d 1056, 1059 (N.D. Cal. 2002). An employee's complaint to his employer about overtime violations is protected under the FLSA; hence, retaliation for making such a complaint is prohibited. *Kasten v. Saint-Gobain*

1  *Performance Plastics Corp.*, __ U.S. __, 131 S.Ct. 1325, 1329 (2011); *Lambert v. Ackerley*,
2  180 F.3d 997, 1007 (9th Cir. 1999).

3     Defendants argue that plaintiff has not adequately pleaded this retaliation claim
4  because the complaint says only that plaintiff complained that nurses were not receiving earned
5  overtime after the manipulation of their time cards, not that he complained about the denial of
6  FLSA overtime or overtime as calculated under state law or the CBA.  ECF No. 17 at 11-12.
7  Defendants rely on a statement from *Kasten*: a complaint falls within the antiretaliation
8  provisions of the FLSA only if it is "sufficiently clear and detailed for a reasonable employer to
9  understand, in light of both content and context, as an assertion of rights protected by the statute
10 and a call for their protection." *Kasten*, 131 S.Ct. at 1335.  In so saying, however, the Supreme
11 Court was not considering whether an employee must mention the FLSA in making his
12 complaint, but rather whether an oral complaint was sufficient for purposes of the anti-retaliation
13 provisions.  Defendants have cited nothing else, beside the general pleading standard of *Iqbal*,
14 that supports their argument about the level of specificity required.  Yet even *Iqbal* does not
15 support their argument: under that case "[a] claim has facial plausibility when the plaintiff pleads
16 factual content that allows the court to draw the reasonable inference that the defendant is liable
17 for the misconduct alleged." *Iqbal*, 556 U.S. at 677.  Plaintiff's averments that he asked for an
18 audit to determine whether the alteration of time cards deprived nurses of overtime gives rise to a
19 reasonable inference that he was complaining about FLSA violations.

20     Defendants next argue that plaintiff has not adequately pleaded that the individual
21 defendants attended the November 8 meeting or otherwise were aware of plaintiff's complaint
22 about time-card alteration.  ECF No. 17 at 12.  Plaintiff counters that it is sufficient that he
23 alleged the individual defendants "would have been directly affected by the investigation."  ECF
24 No. 19 at 3.  The court agrees that the complaint does not contain sufficient factual allegations
25 to give rise to a reasonable inference that the individual defendants were aware of plaintiff's
26 complaints, for "it is '[e]ssential to a causal link . . . that the employer was aware that the

plaintiff had engaged in the protected activity.'" *Siring v. Oregon State Bd. of Higher Educ. ex rel. Eastern Oregon University*, No. 3:11–cv–1407–ST, 2012 WL 5989195, at *30 (D. Or. Nov. 29, 2012) (quoting *Cohen v. Fred Meyer, Inc.*, 686 F. 2d 793, 796 (9th Cir. 1982)); *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993) (stating that "to establish a 'causal connection,' plaintiff must show that the individual who took adverse action against him knew of the employee's protected activity"). There is sufficient information in the complaint to establish KFH's liability for retaliation, but not that of the individual defendants. Plaintiff will be given leave to amend if he is able.

## V.  DISCHARGE IN VIOLATION OF PUBLIC POLICY

Plaintiff asserts two claims for retaliatory discharge in violation of public policy, so-called *Tameny* claims. *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 170 (1980) (holding that "when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions"). Defendants contend that these two state-law claims are preempted by the National Labor Relations Act (NLRA) and the Labor Management Relations Act (LMRA), and that the second discharge claim is not based on any public policy. Plaintiff argues briefly that neither federal statutory scheme preempts the claims and that he has pleaded a sufficient public policy basis for his claim that he was discharged in retaliation for his complaints about staffing ratios. As the court finds both claims preempted by the NLRA, it does not reach defendants' other arguments.

Defendants argue that plaintiff's wrongful termination claims stem from his complaints to Kaiser management about working conditions, made in his capacity as a CNA representative, activity that is protected activity under the NLRA. Plaintiff argues only that because his complaints did not implicate the collective bargaining process, they are not preempted.

/////

Section 7 of the NLRA, 29 U.S.C. § 157, protects employees' right "to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." Section 8, 29 U.S.C. § 158(a)(1), defines unfair labor practices to include an employer's attempt "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in" section 7.  In *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244 (1959), the Supreme Court held that the NLRA preempts state law "[w]hen it is clear or may be fairly assumed that the activities that a State purports to regulate are protected by § 7 . . . or constitute an unfair labor practice under § 8 . . . ." *Garmon* preemption is not limited to state enactments, but extends to the state's exercise of "its power to award damages" because "regulation can be as effectively exerted through an award of damages . . . ." *Id*. at 246-47.  "The *Garmon* rule prevents States not only from setting forth standards of conduct inconsistent with the substantive requirements of the NLRA, but also from providing their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by the Act." *Wis. Dep't of Indus., Labor & Human Relations v. Gould, Inc*., 475 U.S. 282, 286 (1986).  The party claiming an action is preempted bears the burden of showing that the challenged activity is arguably prevented or prohibited.  *Int'l Longshoreman's Ass'n v. Davis*, 476 U.S. 380, 396 (1986).

To be within the ambit of the NLRA, the action must be "concerted," that is, it must be taken "'with or on behalf of other employees, and not solely by and on behalf of the . . . employee himself.'" *Natl. Labor Relations Bd. v. Yurosek*, 53 F.3d 261, 264 (9th Cir. 1995) (quoting *Pacific Electricord Co. v. NLRB*, 361 F.2d 310, 310 (9th Cir. 1966); *see also NLRB v. City Disposal Sys, Inc*., 465 U.S. 822, 830, 832 (1984) (holding that even though the term concerted is not defined in the act, it covers an employee's "invocation of a right grounded in his collective bargaining agreement").  The activity must also be "protected," that is, an action that "'can reasonably be seen as affecting the terms and conditions of employment.'" *Yurosek*,

53 F.3d at 266 (quoting *Gatliff Coal Co. v. NLRB*, 953 F.2d 247, 251 (6th Cir. 1992)).  The Supreme Court has said that "the 'mutual aid or protection clause' protects employees from retaliation by their employers when they seek to improve working conditions through resort to administrative and judicial forums . . . . To hold that activity of this nature is entirely unprotected–-irrespective of the location or the means employed–-would leave employees open to retaliation for legitimate activity that could improve their lot as employees." *Eastex, Inc. v. N.L.R.B.*, 437 U.S. 556, 566-67 (1978).

The court elaborated on *Garmon* preemption in *Sears Roebuck and Co. v. San Diego Dist. Council*, 436 U.S. 180 (1978), a case involving an employer's state court trespass action against a union that protested the use of non-union carpenters by picketing on the employer's property.  The Court in *Sears* recognized that it had "refused to apply the *Garmon* guidelines in a literal, mechanical fashion" because "'the decision to preempt . . . state court jurisdiction over a given class of cases must depend upon the particular interests being asserted and the effect upon the administration of national labor policies' of permitting the state court to proceed." 436 U.S. at 188-89 (quoting *Vaca v. Sipes*, 386 U.S. 171, 180 (1967)).  Recognizing that the basis of *Garmon* preemption is the NLRB's primary jurisdiction over labor disputes, the Court defined the basic analysis when a party claims that state law impacts activity that is arguably protected or arguably prohibited by the NLRA:

> The critical inquiry, therefore, is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to ... or different from ... that which could have been, but was not, presented to the Labor Board. For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid.

*Sears*, 436 U.S. at 197; *see Garmon*, 359 U.S. at 242 (recognizing that the "unifying consideration" of decisions "has been regard to the fact that Congress has entrusted administration of the labor policy" to the NLRB); *Smith v. Nat'l Steel & Shipbuilding Co.*,

125 F.3d 751, 754 (9th Cir. 1997) (recognizing that a court must examine the conduct being regulated rather than the "formal description of the governing legal standard") (internal quotation marks & citations omitted). The Court concluded that had Sears gone to the NLRB, the federal issue would have focused on the reasons for the picketing and a decision on that issue would have involved complex determinations "completely unrelated to the simple question whether a trespass had occurred." *Sears*, 436 U.S. at 198; *see also Belknap v. Hale*, 463 U.S. 491, 509 (1983) (finding replacement workers' claims not preempted when NLRB would consider only whether the strike was an unfair labor practice strike and whether offers to replacements were the kind forbidden during the strike, which would focus on the rights of the strikers, but would not consider whether employer made misrepresentations to replacements). The Court recognized that the primary jurisdiction rationale does not apply in cases of arguably protected conduct when the employee who could have presented the issue to the NLRB did not do so and the employer has no means of doing so. *Sears,* 436 U.S. at 205.

Even if the activity is arguably protected or prohibited, this Court must consider whether it fits within the exceptions to *Garmon* preemption: state activity will not be preempted if it is "a merely peripheral concern" of the NLRA, or if it "touche[s] interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction," a court cannot infer that Congress sought to displace state action. *Garmon*, 359 U.S. at 243–44; *see Local 926, Int'l Union of Operating Engineers v. Jones*, 460 U.S. 669, 676 (1983). To determine "whether regulation should be allowed because of the deeply-rooted nature of the local interest requires a sensitive balancing of any harm to the regulatory scheme . . . either in terms of negating the Board's exclusive jurisdiction or in terms of conflicting substantive rules, and the importance of the asserted cause of action to the state as a protection to its citizens." *Id*.

In their initial briefing, defendants argued only generally that plaintiff's wrongful discharge claims were preempted. At argument, they asserted that these claims fall within the "arguably prohibited" prong of *Garmon/Sears Roebuck* analysis because plaintiff claims he was

12

fired because he engaged in concerted activity for mutual aid and protection. Plaintiff does not appear to challenge defendants' contention that plaintiff's actions as CNA representative are concerted within the meaning of the NLRA, but rather suggests that complaints about overtime have little to do with the core purpose of the NLRA, which is to protect employees' right to collective bargaining. Plaintiff argues that his questioning the manipulation of the acuities, and thus the staffing ratio, raises safety concerns, which are matters "deeply rooted in local feeling."

Plaintiff's actions as a union representative were concerted within the meaning of the NLRA. *See City Disposal Sys.*, 465 U.S. at 830; *Prill v. N. L. R. B.*, 835 F.2d 1481, 1483 (D.C. Cir. 1987) (recognizing that an employee takes concerted action "when he acts with the actual participation or on the authority of his co-workers); *see also Tradesmen Int'l, Inc. v. N. L. R. B.,* 275 F.3d 1137, 1142 (D.C. Cir. 2002) (assuming without deciding that activity as a union representative constituted concerted activity). As explained below, the discharge claims are preempted.

### A. Complaints About Overtime

The Ninth Circuit has said that "concerted employee activities are protected when the 'activities can reasonably be seen as affecting the terms or conditions or employment,'" and that "'[e]mployees who leave their employer's premises 'in protest over wages, hours, or other working conditions' are engaged in protected activities." *Yurosek*, 53 F.3d at 261, 266 (quoting *Gatliff Coal Co. v. N.L.R.B*, 953 F.2d 247, 251 (6th Cir. 1992) and *N.L.R.B v. Modern Carpet Indus., Inc.*, 611 F.2d 811, 813 (10th Cir. 1979)). Concerted activity designed to secure the payment of overtime is protected activity. *U Ocean Palace Pavilion, Inc. & Zi Zheng Yang*, 345 NLRB 1162, 345 No. 97, at *14 (N.L.R.B. Sep. 30, 2005). Plaintiff's request, in his capacity as a CNA representative, that the entire payroll be audited was an action taken for mutual aid and protection under section 7. His discharge in retaliation for his concerted actions for mutual aid and protection was arguably prohibited by § 8 (a)(1). *Mohave Elec. Co-op, Inc., v. N. L .R. B.*, 206 F.3d 1183, 1188 (D.C. Cir. 2000); *Prill*, 835 F.2d at 1483; *see California Acrylic Indus., Inc.*

1  *v. N.L.R.B*, 150 F.3d 1095, 1099 (9th Cir. 1998) (stating that employer violates § 8(a)(1) by
2  "engaging in activity that tends to chill an employee's freedom to exercise his section 7 rights");
3  *see also Lombardi v. Copper Canyon Academy, LLC*, No. 09–CV–8146–PCT–PGR, 2010 WL
4  3775408, at *4 (D. Ariz. Sep. 21, 2010) (recognizing that retaliatory discharge would violate the
5  NLRA, but finding no concerted activity).  Accordingly, because plaintiff could have presented
6  this claim to the NLRB, it is preempted.

7  Plaintiff argues, however, that the claim is not preempted because of the state's
8  interest in securing proper overtime payments for its workers.  He relies on *Babler Brothers v.*
9  *Roberts*, 995 F.2d 911 (9th Cir. 1993) and *Williams v. Hollywood Park Racing Ass'n LLC,* No.
10  CV 12–01184 DDP (FFMx), 2012 WL 1425152 (C.D. Cal. 2012).  *Hollywood Park*, however,
11  discussed LMRA preemption of wrongful discharge cases.  *Babler Brothers* considered an
12  Oregon statute governing the payment of overtime, which it found not to be preempted.  Neither
13  of these cases considered a discharge of an employee for engaging in concerted, protected
14  activity and as such do not aid plaintiff's argument.

15  B.  Complaints About Acuity System/Staffing Ratios

16  Plaintiff's second retaliatory discharge claim is based on California Health and
17  Safety Code § 1276.4, which instructs the State Department of Public Health to adopt regulations
18  establishing minimum patient-to-staff ratios for health care facilities.  Plaintiff argues that his
19  complaints, therefore, focused more on safety issues, which are matters of state concern.

20  In *Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 864 (9th Cir. 1987), the plaintiffs
21  filed a complaint in state court, alleging among other things, they had been terminated after they
22  refused to refuel a generator because of concerns about the safety of the procedure, about which
23  they had complained.  The defendants removed the case to federal court, arguing that the
24  wrongful discharge claims were artfully pleaded claims under the LMRA and were preempted.
25  The court first considered the rules for removal jurisdiction on the basis of preemption, as
26  described by the Supreme Court in *Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987), a case

14

decided under the LMRA. It noted that the district court had concluded that the wrongful termination claim was an artfully pleaded claim, which was preempted by the LMRA, and dismissed it as time-barred. *Id*. at 860, 862. The Ninth Circuit reversed. In a single paragraph, with no analysis, the panel observed that the employees' claim was based on Cal/OSHA provisions requiring employers to provide a safe place of employment and prohibiting the discharge of employees who complain about unsafe working conditions; it also rejected the employer's claim that this was protected concerted activity, and said that the plaintiffs, as masters of their complaint, could choose to plead only a state law claim, again citing to *Caterpillar*. *Id*. It concluded that "*Garmon* analysis is therefore not relevant to this case." *Id.*

Whatever the precedential effect of this cryptic paragraph, which is more about removal jurisdiction than *Garmon* preemption, *Paige* does not control the resolution of this case. As defendants argue, even though plaintiff has pleaded his claim by referring to the Health and Safety Code, the factual allegations of his complaint show that he asked for an audit concerning the "acuity alterations," which might have produced a lower licensed nurse-to-patient ratio than permitted by law and the acuity formulas as defined in the CBA. SAC ¶¶ 17, 19. Plaintiff's request that an acuity audit be undertaken was a concerted activity about working conditions.

Even if the complaint were about safety, it is arguably protected under section 7 and so discharge based on the complaint is arguably prohibited. In *Misericordia Hospital Medical Center v. N. L. R. B.*, 623 F.2d 808 (2d Cir. 1980), the Second Circuit considered the hospital's petition for review of an NLRB determination that its discharge of a nurse for her part in preparing a report critical of hospital safety practice constituted an unfair labor practice. The court concluded that "it is for the Board 'in the first instance' to consider the precise boundaries of the 'mutual aid and protection clause' of § 7"; it approved of the Board's determination that the report, which was critical of nursing staff shortages, raised issues "directly related to employee working conditions." *Id*. at 813. The court observed that "the record supports the Board's finding that the Report raised issues that related not only to patient welfare but to

15

working conditions of the employees; indeed, in the health care field such issues often appear to be inextricably intertwined." *Id.*; *see also Washington State Nurses Ass'n v. N. L. R. B.*, 526 F.3d 577, 582-83 (9th Cir. 2008) (recognizing that "nurses' working conditions are directly related to patient care and safety"); *Summit Healthcare Ass'n,* Case 28-CA-22308, 2011 WL 9363926, at *4-5 (NLRB Div. of Judges Dec. 9, 2011) (finding that nurse's complaint about hospital's policy concerning patients' diets was conduct for mutual aid and protection because nurses could not adequately perform their duties if diet cards were not filled out). Despite plaintiff's characterization of this claim as relating to patient safety, his complaint is properly viewed as concerted activity for mutual aid and protection such that his termination was an unfair labor practice. Nor does it deal solely with interests deeply rooted in local feeling and responsibility: while patient safety is indeed a state concern, plaintiff does not allege that any change in the acuity formulas in fact endangered safety. The claim is preempted. *Cf. New England Health Care Employees. Union v. Rowland*, 204 F. Supp. 2d 336, 351 (D. Conn. 2002) ( "'[w]hile the State may not prohibit the employees from going out on strike, ... when it appears that the lives and health of nursing home residents are threatened, the State remains free, in the exercise of its local responsibility, to take whatever reasonable steps are necessary to protect the residents from the effects of strike activity.'") (quoting *N.L.R.B. v. State Of N.Y.*, 436 F.Supp. 335, 339 (E.D.N.Y. 1977)).

   IT IS THEREFORE ORDERED THAT:

   1. Defendants' motion to dismiss (ECF No. 16) is granted; and

   2. Plaintiff's amended complaint is due within twenty-one days of the date of this order.

DATED: January 8, 2013.

_____
UNITED STATES DISTRICT JUDGE